IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| ROBERT W. BOYD, III, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 07-0139-CV-W-ODS |
| NOVASTAR FINANCIAL, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |
| GARY M. TANNER, On Behalf of Himself and All Others Similarly Situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 07-0147-CV-W-ODS |
| NOVASTAR FINANCIAL, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |
| MICHAEL OWENS, On Behalf of Himself and All Others Similarly Situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 07-0166-CV-W-ODS |
| NOVASTAR FINANCIAL, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |
| ALAN JAMES BIMA, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |

| | |
|---|---|
| vs. ) | Case No. 07-0170-CV-W-ODS |
| ) | |
| NOVASTAR FINANCIAL, INC., et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |
| LEE M. EIDSON, individually ) | |
| and on behalf of all others ) | |
| similarly situated, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 07-0175-CV-W-ODS |
| ) | |
| NOVASTAR FINANCIAL, INC., et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |
| JACK F. DUNBAR, On Behalf of ) | |
| Himself and All Others Similarly ) | |
| Situated, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 07-0176-CV-W-ODS |
| ) | |
| NOVASTAR FINANCIAL, INC., et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |
| DURSTON WINESBURG, On Behalf of ) | |
| Himself and All Others Similarly ) | |
| Situated, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 07-0202-CV-W-ODS |
| ) | |
| NOVASTAR FINANCIAL, INC., et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |
| JAMES E. MURPHY, On Behalf of ) | |
| Himself and All Others Similarly ) | |
| Situated, ) | |

|                                     | )   |                              |
| ----------------------------------- | --- | ---------------------------- |
| Plaintiff,                          | )   |                              |
|                                     | )   |                              |
| vs.                                 | )   | Case No. 07-0282-CV-W-ODS    |
|                                     | )   |                              |
| NOVASTAR FINANCIAL, INC., et al.,   | )   |                              |
|                                     | )   |                              |
| Defendants.                         | )   |                              |
| _____   | )   |                              |

### ORDER AND OPINION CONSOLIDATING ACTIONS, DESIGNATING DR. KEVIN LESTER AS LEAD PLAINTIFF, AND DIRECTING SUBMISSION OF ADDITIONAL INFORMATION REGARDING LEAD COUNSEL

These putative class actions allege various violations of the Securities Exchange Act. Pending are multiple motions for consolidation, appointment of lead plaintiff(s), and approval of selection of lead counsel. Also pending are some minor motions that can easily be addressed at this time.

### I. MOTIONS TO CONSOLIDATE

The Private Securities Litigation Reform Act ("PSLRA") directs the Court to address outstanding motions to consolidate before appointing lead plaintiff(s). 15 U.S.C. § 78u-4(a)(3)(B)(ii). There are multiple motions to consolidate. None are opposed (although Defendant did not specifically respond to the motions filed in *Owens v. Novastar Financial, Inc.*). The motions to consolidate will be granted.

All cases listed in the caption of this Order are consolidated under Case No. 07-0139-CV-W-ODS, which will be re-captioned as "In re 2007 Novastar Financial Inc. Securities Litigation." All future filings should bear this caption and case number.

3

## II. APPOINTMENT OF LEAD PLAINTIFF

The Court has received multiple Motions for Appointment of Lead Plaintiff. The Court has also received notices from some movants indicating a desire to withdraw their request.

Under the PSLRA, the Court shall appoint as lead plaintiff(s) the member or members of the class it "determines to be most capable of adequately representing the interests of the class members." 15 U.S.C. § 78u-4(a)(3)(B). The most adequate plaintiff is the person or group of persons that has complied with the following requirements:

(1) Publish, in a widely circulated national business-oriented publication, a notice advising members of the purported plaintiff class of the pending action;

(2) Has the largest financial interest in the relief sought by the class; and

(3) Otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §§ 78u-4(a)(3)(A), 78u-4(a)(3)(B)(iii). The publication requirement has been satisfied, so the Court will proceed to the second and third criteria.

### A. Largest Financial Interest

Formal motions for appointment as lead plaintiff have been filed by the following:

1) Bruce Gilmore and Steven Gedy

2) Norman Pelletier

3) The NovaStar Individual Investors Group (consisting of Frank Busacca, Chris Fotopoulos, and Heinz von Appen)

4) The NovaStar Shareholder Group (consisting of Anthony Parisi, William Kruzona, Bruce Reamer, Narain Bhojwani, and George Lohmann)

5) The Brown Group

6) Dr. Kevin Lester

7) The Hinson Group (consisting of Rubert Nukols, Alan Bima, Jim Basquette, Charles Hinson, and Iris Iaccarino)

8) The Helton Group (consisting of Leonard Helton, Jay Freeman, Theodore Carter, Favorita Group Ltd., and Michael Tedesco)

Some of these "groups" include named plaintiffs, and some do not. The Brown Group, Norman Pelletier, Bruce Gilmore, and Steven Gedy subsequently expressed their belief Dr. Lester had the most significant loss and withdrew their applications.

When it enacted the PSLRA, "Congress sought to create mechanisms to ensure the protection of class members' interests in securities litigation that was widely perceived as being lawyer-instituted and lawyer-driven." In re BankAmerica Corp. Sec. Litig., 350 F.3d 747, 751 (8th Cir. 2003) (citing In re Cendant Corp. Litig., 264 F.3d 201, 254-68 (3d Cir. 2001)). The PSLRA furthers this objective by requiring the Court to appoint a lead plaintiff or group of lead plaintiffs in accordance with the statute. The movant with the largest financial interest is presumptively the lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted by a showing that the presumptive lead plaintiff: (1) will not fairly and adequately protect the interests of the class, or (2) is subject to unique defenses that render such plaintiff incapable of adequately representing the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Ascertaining the movant with the largest financial interest requires ascertaining (or, more precisely, predicting) the opening and closing dates for the class period. All concerned are in agreement that the relevant time period is May 4, 2006 to February 20, 2007. The ending date is appropriate because NovaStar published information revealing the alleged fraud after the market closed that day.

The next issue is the identification of who should be considered. As noted, some of the motions were filed by combinations of aggrieved shareholders. The PSLRA contemplates the appointment of a person or "group of persons" as lead plaintiff, but it does not define "group." Nevertheless, most courts have determined that the

5

appointment of a group of unrelated plaintiffs is not appropriate under the PSLRA.  See In re Conseco, Inc. Sec. Litig., 120 F. Supp. 2d 729, 733 (S.D. Ind. 2000); Aronson v. McKesson HBOC, Inc., 79 F. Supp. 2d 1146, 1153 (N.D. Cal. 1999); In re Texlon Corp. Sec. Litig., 67 F. Supp. 2d 803, 816 (N.D. Ohio 1999); In re Donnkenny Inc. Sec. Litig., 171 F.R.D. 156, 157-58 (S.D.N.Y. 1997).  The Court agrees with the reasoning of these decisions and concludes that granting a request to appoint an unrelated group of investors would thwart the PSLRA's goal of preventing lawyer-driven litigation.  Organizing disparate combinations of shareholders for the purpose of aggregating the "most damage" is contrary to the spirit and purposes of the Act, and it is unreasonable to construe the PSLRA's reference to a "group" as meaning a "group of otherwise disinterested and disconnected parties."[1]  However, while the law may not require the Court to consider each member of each group separately, the Court will do so.  The interests at stake belong not only to those before the Court but also to all members of the class, and the members of the class are entitled to be represented by the most adequate plaintiff (as defined by Congress) regardless of whether the most adequate plaintiff has associated with a disparate group the Court declines to consider collectively.

Some of those seeking appointment as lead plaintiff have calculated losses from trades in preferred stock and options.  The PSLRA-required notice announcing the pendency of these proceedings and the corresponding opportunity to participate declares the suit seeks recovery for purchasers of NovaStar's common stock – not options on that stock and not preferred stock.  The notice requirement allows others who might be better situated to control the litigation to come forth and participate, and option traders and preferred stock purchasers have not been so notified.  Consequently,

---

[1]Thus, for instance, the members of an investment club would be permitted to constitute a "group" within the meaning of the PSLRA.

6

any class that is certified will not include those individuals, and it would be inappropriate to consider losses that will not be at issue in this litigation.[2]

Finally, there is the calculation of financial interests. The PSLRA does not articulate the procedure for determining the largest financial interest among the competing movants. A four-factor inquiry has been recognized or adopted by various courts. See In re Enron Corp. Sec. Litig., 206 F.R.D. 427, 440 (S.D. Tex. 2002); In re Olsten Corp. Sec. Litig., 3 F. Supp.2d 286, 295 (E.D.N.Y. 1998); In re Nice Sec. Litig., 188 F.R.D. 206, 217 (D. N.J. 1998). The four factors are: (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs. Enron Corp. Sec. Litig., 206 F.R.D. at 440. However, this analysis should be modified to reflect the Supreme Court's decision in *Dura Pharmaceuticals, Inc. v. Broudo*. The Court held a plaintiff cannot prevail if all they do is establish the price on the date of purchase was inflated due to fraudulent conduct because "an inflated purchase price will not itself constitute or proximately cause the relevant economic loss." 544 U.S. 336, 342 (2005). No loss is incurred at the moment of purchase; loss is incurred only upon the sale of the security. Thus, if an investor purchases stock before the fraud occurs and sells after the fraud occurs (but before the truth is revealed), the investor cannot have been harmed by the fraud. Similarly, if an investor buys *and* sells the stock after the fraud occurs and before the truth is revealed, any fluctuation in the stock price cannot be attributed to the fraud. Id. at 342-43; Glaser v. Enzo Biochem, Inc., 464 F.3d 474, 478-79 (4th Cir. 2006), cert. denied, 127 S. Ct. 1876 (2007). Therefore, the number of shares purchased during the class period is less relevant than the *net* number of shares purchased during the class period, as the latter figure will represent the number of shares purchased after the fraud and held when the fraud was revealed. Also, instead of trying to ascertain an appropriate price for the hypothetical sales (which is necessary to compute damages), the Court will rely on each investor's

---

[2]Nothing herein is intended to preclude an option trader or preferred stock purchaser from filing a suit, complying with the PSLRA, and attempting to certify an appropriate class.

7

basis in his, her or its net shares. Losses will be calculated by subtracting the value of the shares from the basis, but the value of the shares after the fraud was revealed – whatever that value is – will be the same for each investor, so determining that value is unnecessary. Each investor's basis in the net shares is a fair approximation of their relative stake in the litigation.

The information supplied reveals the following (1) net purchases of NovaStar's common stock and (2) the approximate corresponding basis in those net purchases:

|  | Name | Net Shares | Basis in Net Shares |
|---|---|---|---|
| 1. | Frank Busacca | 8,592 shares | $229,222.30 |
| 2. | Chris Fotopoulos | 9,400 shares | $240,308.00 |
| 3. | Hienz von Appen | 8,500 shares | $246,675.00 |
| 4. | Anthony Parisi | 6,400 shares | $201,012.00 |
| 5. | William Kruzona | 7,000 shares | $212,099.76 |
| 6. | Bruce Reamer | 11,000 shares | $239,588.20 |
| 7. | Narain Bhojwani | 2,600 shares | $ 82,600.00 |
| 8. | George Lohmann | 5,250 shares | $ 86,174.75 |
| 9. | Dr. Kevin Lester | 73,750 shares | More than $2.2 million |
| 10. | Robert Nukols | 18,001 shares | $428,770.80 |
| 11. | Alan Bima | 18,000 shares | $459,620.36 |
| 12. | Jim Basquette | 10,000 shares | $333,900.00[3] |
| 13. | Charles Hinson | 22,242 shares | $560,657.60 |
| 14. | Iris Iaccarino | 6,200 shares | $155,620.00 |
| 15. | Leonard Helton | 18,257 shares | $558,251.22 |
| 16. | Jay Freeman | 10,000 shares | $337,180.00 |
| 17. | Theodore Carter | 8,506 shares | $245,133.90 |

---

[3] A purchase of 2,000 shares on February 20, 2007, has been excluded from Basquette's transactions. While that is the last day of the class period, the purchase price is consistent with the opening price on February 21, 2007 – after NovaStar revealed the alleged fraud. It may be that the order was placed on February 20 and executed the next day; regardless, this transaction appears to have taken place after corrective information was divulged and should not be considered.

| | | | |
|---|---|---|---|
| 18. | Favorita Group Ltd | 23,000 shares | $397,066.09[4] |
| 19. | Michael Tedesco | 7,000 shares | $156,320.00 |

In addition to these movants, the Court has considered (to the extent possible) the eligibility of the plaintiffs that have not filed a formal motion. Gary Tanner sold all of his stock within the relevant time period, so his net holdings are zero. Robert Boyd's information cannot be analyzed because it includes transactions from entities that have no identifiable connection to Boyd. The remaining plaintiffs' transactions are reflected below:

| | Name | Net Shares | Basis in Net Shares |
|---|---|---|---|
| 1. | Michael Owens | 2,200 | $ 69,718.05 |
| 2. | Lee Eidson | 500 | $ 18,770.00 |
| 3. | Jack Dunbar | 500 | $  8,892.48 |
| 4. | Durston Winesburg | 1,500 | $ 45,939.84 |
| 5. | James Murphy | 360 | $ 11,008.80 |

Of all the candidates, Dr. Kevin Lester held the most shares and suffered the greatest loss.[5] No party has suggested any reason why Dr. Lester is not qualified, and the Court discerns no statutory basis for disqualifying him or bypassing him in favor of any other applicant.[6]

---

[4]Favorita Group's sales occurred before its purchases, indicating it may have been engaging in short selling. There is no need to consider this possibility because Favorita Group's losses are insufficient to allow it to be considered the lead plaintiff.

[5]Interestingly, Dr. Lester's net purchases were greater than all the groups seeking lead plaintiff designation except for the Hinson Group – and in that case, his net purchases were only 693 shares less. Dr. Lester's basis in his shares exceeded all of the groups – including the Hinson Group, whose basis was approximately $300,000 less than Dr. Lester's. Thus, even if the Court were to consider groups of disparate investors, Dr. Lester would still emerge as the lead plaintiff.

[6]As the Court's detailed discussion demonstrates, the Court has *not* designated Dr. Lester as lead plaintiff simply because none of the other movants specifically opposed his designation. Elsewhere in this Order the Court noted the interests at stake

## C. Otherwise Satisfies Rule 23's Requirements

The PSLRA also requires that the lead plaintiffs satisfy the requirements of the Federal Rules of Civil Procedure, which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Numerosity and commonality are not issues in dispute; all concerned agree (at least preliminarily) that these requirements are satisfied.

The lead plaintiff "must make at least a preliminary showing that it has claims that are typical to the putative class and has the capacity to provide adequate representation for those class members." Enron Corp. Sec. Litig., 206 F.R.D. at 441 (citations omitted). However, "[a] proposed class representative is not adequate or typical if it is subject to a unique defense that threatens to play a major role in the litigation." In re Milk Prods. Antitrust Litig.,195 F.3d 430, 437 (8th Cir. 1999) (citations omitted); see also In re Safeguard Scientifics, 216 F.R.D. 577, 581-82 (E.D. Pa. 2003) (citations omitted). Typicality assesses "whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class

---

belong to more than just the parties before the Court. More fundamentally, the existence of competing motions seeking incompatible courses of action automatically oppose each other; while a specific opposition could have been filed if a party deemed it appropriate, there was no need to do so. The Court expects counsel to keep these thoughts in mind (particularly as it relates to the obligations to the class as a whole) instead of seeking short-cuts as it did when it sought a "default designation" for Dr. Lester and itself. See Doc. # 44.

The Court also observes the authority cited by counsel is inapposite, as that case involved a situation in which only one motion for appointment as lead plaintiff was filed, and that motion was granted because no alternatives were present. In re Sprint Corp. Sec. Litig., 164 F. Supp. 2d 1240, 1242 n.2 (D. Kan. 2001). The case at bar had competing motions, requiring consideration of their merits.

10

members so as to assure that the absentees' interests will be fairly represented." Safeguard Scientifics, 216 F.R.D. at 581. "Adequate representation requires a finding that the purported class representative and its attorney are capable of pursuing the litigation and that neither has a conflict of interest with other class members." In re Cree, Inc. Sec. Litig., 219 F.R.D. 369, 372 (M.D. N.C. 2003) (citing Sosna v. Iowa, 419 U.S. 393, 403 (1975)).

Dr. Lester's claims appear to be typical of those possessed by the class. The Court discerns, and no party has suggested, any reason to conclude otherwise.

### III.  CLASS COUNSEL

The "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). Lead Plaintiff seeks approval of his selection of the two law firms as class counsel: Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin") and Klafter & Olsen LLP ("Klafter Olsen"). The Court defers consideration of this issue until Lead Plaintiff can submit additional information.

Lerach Coughlin filed the first lawsuit described in this caption, *Boyd v. Novastar Financial, Inc.*, on behalf of Robert W. Boyd III. On April 24, 2007, Dr. Lester's motion to be appointed lead counsel was filed; in addition to local counsel, Lerach Coughlin and Klafter Olsen appeared as counsel on the motion. The material submitted demonstrate both firms have significant experience litigating securities class actions and possess the expertise and resources (including well-qualified attorneys) to effectively manage the class action and protect the class's interests. Either firm would be an acceptable Lead Counsel – but nothing presented to date justifies appointing *two* such firms.

The presence of multiple law firms can have a deleterious effects. Most significantly, it can result in redundancies and inefficiencies that cause the total fee to increase. The potential for incurring extra fees is not in the class's best interest, unless there is some reason that two firms are needed. As stated, no justification has been offered.

11

It may be that one of the firms possesses some expertise the other lacks; the Court finds it difficult to believe either firm is demonstrably "better" than the other in any given area, but even if this were the case the Court would expect the parties to explain the need for both of them to work as counsel on this case. It may be that Klafter Olsen wishes to be involved because it "found" Dr. Lester and plans to defer to Lerach Coughlin – in which case it probably does not need to be designated as co-lead counsel. Regardless of the reason for needing two law firms where it appears one will suffice, the reason needs to be presented so it can be evaluated by the Court. The Court will defer consideration of this matter for twenty days to allow either (1) the submission of additional information as discussed herein or (2) Lead Plaintiff to select one of the two law firms to serve as class counsel. Once the Court approves the selection of Class Counsel, additional deadlines will be established.

## IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED:

(A) In <u>Boyd v. Novastar Financial, Inc.</u>, Case No. 07-00139:
1. The motions to consolidate and to be designated lead plaintiff filed by people other than Dr. Lester (Docs # 12, 15, 16, 20, 22, 27, 30, and 36) are granted to the extent they seek consolidation but denied in all other respects;
2. The motion to consolidate and to be designated lead plaintiff filed by Dr. Lester (Doc. # 25) is granted in all respects except with respect to the request to designate class counsel; this aspect of the motion is deferred;
3. The motion for extension of time to file an answer (Doc. # 7) is granted. No answers will be due from any Defendant until after an Amended Complaint is filed by Class Counsel; the precise deadline will be established at a later time; and
4. The motion for leave to withdraw (Doc. # 43) is granted, and Susan Meagher is granted leave to withdraw as counsel for Michael Owens,

12

Joshua Brown, Merri-Jo Hillaker, Charles & Lois McComb, and William Weakley.

(B) In <u>Tanner v. Novastar Financial, Inc.</u>, Case No. 07-0147:
1. The motions to consolidate and to be designated lead plaintiff (Docs # 7, 8, 10, 12, and 15) are granted to the extent they seek consolidation but denied in all other respects; and
2. The motion for leave to withdraw (Doc. # 21) is granted, and Susan Meagher is granted leave to withdraw as counsel for Michael Owens, Joshua Brown, Merri-Jo Hillaker, Charles & Lois McComb, and William Weakley.

(C) In <u>Owens v. Novastar Financial, Inc.</u>, Case No. 07-0166:
1. The motions to consolidate and to be designated lead plaintiff (Docs # 5,6,9 and 13) are granted to the extent they seek consolidation but denied in all other respects; and
2. The motion for leave to withdraw (Doc. # 19) is granted, and Susan Meagher is granted leave to withdraw as counsel for Michael Owens, Joshua Brown, Merri-Jo Hillaker, Charles & Lois McComb, and William Weakley.

(D) In <u>Bima v. Novastar Financial, Inc.</u>, Case No. 07-0170:
1. The motions to consolidate and to be designated lead plaintiff (Docs # 8, 9, 11, 13 and 16 7, 8, 10, 12, and 15) are granted to the extent they seek consolidation but denied in all other respects; and
2. The motion for leave to withdraw (Doc. # 22) is granted, and Susan Meagher is granted leave to withdraw as counsel for Michael Owens, Joshua Brown, Merri-Jo Hillaker, Charles & Lois McComb, and William Weakley.

(E) In <u>Eidson v. Novastar Financial, Inc.</u>, Case No. 07-0175:
1. The motions to consolidate and to be designated lead plaintiff (Docs # 4, 6, 7, 9, 11, and 14) are granted to the extent they seek consolidation but denied in all other respects; and

2. The motion for leave to withdraw (Doc. # 19) is granted, and Susan Meagher is granted leave to withdraw as counsel for Michael Owens, Joshua Brown, Merri-Jo Hillaker, Charles & Lois McComb, and William Weakley.

(E) In <u>Dunbar v. Novastar Financial, Inc.</u>, Case No. 07-0176:

1. The motions to consolidate and to be designated lead plaintiff (Docs # 8, 9, 11, 13 and 16) are granted to the extent they seek consolidation but denied in all other respects;

2. The motion for leave to withdraw (Doc. # 22) is granted, and Susan Meagher is granted leave to withdraw as counsel for Michael Owens, Joshua Brown, Merri-Jo Hillaker, Charles & Lois McComb, and William Weakley; and

3. The motion for extension of time to file an answer (Doc. # 6) is moot.

(F) In <u>Winesburg v. Novastar Financial, Inc.</u>, Case No. 07-0202:

1. The motions to consolidate and to be designated lead plaintiff (Docs # 7, 8, 10, 12 and 15) are granted to the extent they seek consolidation but denied in all other respects;

2. The motion for leave to withdraw (Doc. # 22) is granted, and Susan Meagher is granted leave to withdraw as counsel for Michael Owens, Joshua Brown, Merri-Jo Hillaker, Charles & Lois McComb, and William Weakley; and

3. The motion for extension of time to file an answer (Doc. # 5) is moot.

(G) In <u>Murphy v. Novastar Financial, Inc.</u>, Case No. 07-0282:

1. The motions to consolidate and to be designated lead plaintiff (Docs # 4, 5, 7, 9, and 12) are granted to the extent they seek consolidation but denied in all other respects;

2. The motion for leave to withdraw (Doc. # 19) is granted, and Susan Meagher is granted leave to withdraw as counsel for Michael Owens, Joshua Brown, Merri-Jo Hillaker, Charles & Lois McComb, and William Weakley; and

3. The motion for extension of time to file an answer (Doc. # 15) is moot.

IT IS SO ORDERED.

                                                /s/ Ortrie D. Smith
                                                ORTRIE D. SMITH, JUDGE
DATE: July 9, 2007                            UNITED STATES DISTRICT COURT